F I L E D
IN COURT
CHARLOTTE, N. C.

UEC 1 5 2004

U. S. DISTRICT COURT
W. DIST. OF N. C.

**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:04CR328-Mu |
| | ) | |
| | ) | BILL OF INDICTMENT |
| v. | ) | |
| | ) | |
| | ) | 18 U.S.C. § 2 |
| (1) JAMES A. GIBSON, | ) | 18 U.S.C. § 371 |
| (2) JEFFERY M. HICKS, | ) | 18 U.S.C. § 1341 |
| Defendants | ) | 18 U.S.C. § 1343 |
| | ) | |

THE GRAND JURY CHARGES THAT:

# INTRODUCTION

1. Beginning in or about September 1999, JAMES A. GIBSON ("GIBSON") and JEFFERY M. HICKS ("HICKS"), defendants herein, and others in the Western District of North Carolina and elsewhere, devised and executed a scheme to defraud private mortgage lenders by submitting false and fraudulent mortgage loan applications in the names of individual borrowers they solicited to purchase real property. Through fraudulent methods, the defendants and their co-conspirators obtained mortgage loans secured by properties throughout North Carolina with inflated values.

2. GIBSON created and used an entity known as AMERICAN HOME LENDING (AHL) to induce prospective real property buyers to provide them with credit information in order to purchase real property, chosen by GIBSON and HICKS. The defendants and their co-conspirators used various methods to defraud mortgage lenders and real estate buyers. In each method, all of the money in the transactions came from a mortgage loan taken in the name of an individual buyer. Lenders were not informed that mortgage loan collateral was over-valued.

3. GIBSON and HICKS and their co-conspirators profited from the difference between the purchase price and the inflated purchase price paid by the named buyer/borrowers with mortgage loan proceeds. The inflated purchase prices due from the buyer/borrowers were financed in whole or in substantial part by mortgage loans in the name of the named buyer/borrowers.

4. GIBSON and HICKS devised a scheme to defraud mortgage lenders wherein defendants located real property for sale. GIBSON and HICKS manipulated the sales prices of the property and solicited buyers for the property.

*U.S. v. Hicks and Gibson*
Page 1

5. During the course of the scheme, GIBSON and HICKS told prospective buyers that they would receive cash payments for each real property purchased by the buyer/borrower. In most instances, buyer/borrowers were told they would not be responsible for any mortgage loan payments. In order to obtain mortgage loans in the names of individual buyer/borrowers, GIBSON and HICKS submitted mortgage loan applications through AHL to various mortgage lenders throughout the United States. These mortgage applications contained materially false information, including the buyer/borrowers' income and that the real properties purchased with the loans were intended as the borrowers' primary residences.

6. GIBSON and HICKS used altered and fabricated real estate appraisal reports to support the inflated values they assigned to the properties used as mortgage loan collateral. GIBSON used legitimate appraisal reports as templates to make inflated appraisal reports by falsifying material information about the subject property and comparable values. As a result, individual buyer/borrowers were left with property that GIBSON and HICKS knew was over-valued and the borrowers could not afford. Individual buyer/borrowers suffered damage to their credit and other losses when lenders foreclosed on the properties. Lenders suffered losses when the inflated properties were sold at their fair market values, leaving substantial deficiencies on the foreclosed loans.

7. An attorney known to the grand jury, hereinafter referred to as the "Closing Attorney," is an attorney licensed to practice law in North Carolina. The Closing Attorney prepared and submitted closing documents to lenders, including HUD-1 settlement statements that were manipulated to conceal the true source of down payments and disbursements, as well as other false information.

8. When each transaction closed, GIBSON and HICKS submitted fraudulent invoices (hereinafter referred as "fabricated invoices") to the Closing Attorney for construction and repair work purportedly performed on the collateral property, when they then knew no such work had been completed. The amount of the repair invoices was approximately the difference between the amount due the seller and the inflated appraised value. The Closing Attorney prepared disbursement checks, which included payments based on the fabricated invoices, in the names of nominee payees. GIBSON and HICKS paid the nominee payees to cash the disbursement checks and return the proceeds to them.

9. During the course of the scheme, GIBSON, HICKS and the Closing Attorney used private and commercial interstate carriers to mail, and caused to be mailed, false documents between Closing Attorney in the Western District of North Carolina and mortgage lenders and associated entities. The defendants and their co-conspirators also caused interstate wire transmissions, including telephone calls, facsimile transmissions, and bank wire transfers, to be made between lenders in other states and the Closing Attorney, in North Carolina.

# COUNT ONE

<u>Violation:</u> 18 U.S.C. § 371 (Conspiracy).

10. Paragraphs 1 through 9 of the Introduction to this Bill of Indictment are hereby realleged and incorporated by reference into Count One.

11. Beginning in and around September 1999, and continuing through in and around May 2000, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendants

**JAMES A. GIBSON**
**and**
**JEFFERY M. HICKS**

did conspire, combine, confederate and agree, by and between themselves and other persons known and unknown to the Grand Jury to commit offenses against the United States, including violations of Title 18, United States Code, Sections 1343 (wire fraud) and 1341 (mail fraud).

## MANNER AND MEANS

12. The defendants, unindicted co-conspirators and others known and unknown to the Grand Jury, carried out the conspiracy in the manner and means described in Introductory paragraphs 1 through 9 of this Bill of Indictment, among others.

## OVERT ACTS

13. In furtherance of this conspiracy and to effect the objects thereof, at least one of the conspirators herein committed, among others, in the Western District of North Carolina and elsewhere, at least one of the following overt acts:

   a. Beginning in and around September 1999, and continuing through in and around May 2000, GIBSON and HICKS, personally and through their agents, solicited buyers to participate in their real estate scheme.

   b. In and around January or February of 2000, GIBSON and HICKS solicited an individual known to the grand jury as C.W. to become a buyer of real property offered for sale by GIBSON and HICKS.

   c. On or about February 25, 2000, GIBSON and HICKS, induced C.W. to sign documents at the Closing Attorney's office in Charlotte, North Carolina for a mortgage loan in the amount of $123,500. In order to obtain the mortgage loan in C.W.'s name, GIBSON and

HICKS submitted false information, including false borrower income information, to Texcorp Mortgage's offices outside of North Carolina.

d.      In and around March or April of 2000, GIBSON and HICKS solicited an individual known to the grand jury as H.M. to become a buyer of real property offered for sale through GIBSON and HICKS.

e.      On or about April 17, 2000, GIBSON and HICKS induced H.M. to sign documents at the Closing Attorney's offices in Charlotte, North Carolina for a mortgage loan in the amount of $57,000. In order to obtain the mortgage loan in H.M.'s name, GIBSON and HICKS submitted false information, including false borrower income information, to Texcorp Mortgage's offices outside of North Carolina.

f.      In and around April or May of 2000, GIBSON and HICKS solicited an individual known to the grand jury as R.M. to become a buyer of real property offered for sale GIBSON and HICKS.

g.      On or about May 2, 2000, GIBSON and HICKS induced R.M. to sign documents at the Closing Attorney's offices in Charlotte, North Carolina for a mortgage loan in the amount of $66,825. In order to obtain the mortgage loan in R.M.'s name, GIBSON and HICKS submitted false information, including false borrower income information, to Texcorp Mortgage's offices outside of North Carolina.

h.      In and around April or May of 2000, GIBSON and HICKS solicited an individual known to the grand jury as D.F. to become a buyer of real property offered for sale through GIBSON and HICKS.

i.      On or about May 3, 2000, GIBSON and HICKS induced D.F. to sign documents at the Closing Attorney's offices in Charlotte, North Carolina for the mortgage totaling $65,250. In order to obtain the mortgage loan in D.F.'s name, GIBSON and HICKS submitted false information, including false borrower income information, to Texcorp Mortgage's offices outside of North Carolina.

## <u>COUNTS TWO through FIVE</u>

<u>Violation</u>:      18 U.S.C. §§ 1343 (Wire Fraud) and 2 (Aiding and Abetting).

14.      Paragraphs 1 through 9 of the Introduction to this Indictment and Count One are re-alleged and incorporated by reference into each of Counts Two through Five.

15.      On or about the dates listed below for Counts Two through Five, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants,

*U.S. v. Hicks and Gibson*
Page 4

aided and abetted by each other and persons known and unknown to the Grand Jury, having devised a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did knowingly cause the proceeds of mortgage loans made in the names of the individuals listed below to be sent from Texcorp Mortgage's bank accounts outside the State of North Carolina, by mean of interstate wire transmissions, to the trust account of the Closing Attorney, in Charlotte, North Carolina, in the names of the individuals and in the approximate amounts listed below:

| COUNTS | DATE OF WIRES | BORROWERS | APPROXIMATE LOAN PROCEEDS |
|--------|---------------|-----------|---------------------------|
| TWO | February 25, 2000 | C.W. | $123,500 |
| THREE | April 17, 2000 | H.M. | $57,000 |
| FOUR | May 2, 2000 | R.M. | $66,825 |
| FIVE | May 3, 2000 | D.F. | $65,250 |

Each wire transmission being a separate violation of Title 18, United States Code, Sections 1343 and 2.

## AGGRAVATING FACTORS

16. With respect to each of Counts One through Five of this Bill of Indictment, the amount of loss foreseeable to GIBSON and HICKS is greater than $120,000, but less than $200,000, as set forth in the United States Sentencing Commission's Guideline Manual ("U.S.S.G.") § 2F1.1(b)(H).

17. With respect to each of Counts One through Five, GIBSON's and HICKS' offenses involved more than minimal planning and a scheme to defraud more than one victim, as set forth in U.S.S.G. § 2F1.1(b)(2).

18. With respect to each of Counts One through Five, GIBSON's and HICKS' offenses involved sophisticated means, as set forth in U.S.S.G. § 2F1.1(b)(6)(C).

19. With respect to Counts One through Five, GIBSON was an organizer and leader of a criminal activity that involved five and more participants and was extensive, as set forth in U.S.S.G. § 3B1.1(a).

20. With respect to Counts One through Five, HICKS was a manager and supervisor of a criminal activity that involved five and more participants and was extensive, as set forth in U.S.S.G. § 3B1.1(b).

A TRUE BILL:

_Barbara M. McBryde_
Foreperson

GRETCHEN C.F. SHAPPERT
UNITED STATES ATTORNEY

MICHAEL E. SAVAGE
ASSISTANT UNITED STATES ATTORNEY